# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CHASE v. MILLER.

### NOVEMBER 16th, 1893.

RESCISSION—*Fraud—Evidence—Case at bar.*—Vendor sued to rescind sale of land on the ground that vendee misrepresented his ability to pay. Vendor was informed that vendee expected certain money. After the sale, but before vendee was put into possession, he told the former he was disappointed in his expectation. The cash payment was made, but not so the deferred payments. The vendor knowing the vendees disappointment, sought to enforce the contract. There was no evidence of fraudulent representations, though present insolvency was proved.

HELD:

> Vendor was not entitled to rescind the sale, his remedy being to ask for specific performance and sale of the land.

Argued at Staunton.   Decided at Richmond.

Appeal from decree of circuit court of Frederick county, rendered July 15, 1892, in a chancery suit, wherein J. M. Miller was complainant, and W. C. Chase, the appellant, was defendant.   Opinion states the case.

*Holmes Conrad,* for appellant.

*John J. Williams,* for appellee.

LACY, J. delivered the opinion of the court.

The bill was filed in this cause by the appellee, J. M. Miller, seeking the rescission of a contract between him and the

appellant, W. C. Chase, for the sale by Miller to Chase of a tract of land called "Vaucluse," situated in the said county, executed April 18, 1892, under which Miller had put Chase in possession; and to reinvest Miller with the title, legal and equitable, and to restore Miller to the possession; to have an account of the payments made by Chase, and for the appointment of a receiver to take charge of the tract of land in question; and for an account of the rents, profits, and proceeds of the land; and praying an injunction to enjoin and restrain the defendant and his agents from disposing of any proceeds of the land, leasing or renting or selling the same, or any part thereof, and from cutting wood from the land. The ground upon which the rescission is asked is that the defendant fraudulently deceived the plaintiff as to his means of paying for the land, falsely stating that he had made sales of valuable property, by the proceeds of which he could pay for the land. The defendant demurred and answered. In his answer he denied that he had ever made any false or fraudulent representations as an inducement to the sale; that at the time of the purchase he had, in his opinion, ample means to pay for the land; that he had made some payments, and had used his best ability to make sale of enough of his property to meet this indebtedness, but had been disappointed. The depositions are taken, which show that the seller was anxious to sell and the buyer equally anxious to buy at the price demanded. The dispute between them was not as to the price of the property, but as to the terms of payment. The seller demanded $15,000 for the land, and the buyer agreed to pay that sum for it. But the seller demanded a down payment of $5,000; but the buyer did not agree to this, because, as he stated, it was out of his power to pay so much cash. Finally, at the railway station, when they were awaiting the train upon which the proposed buyer was to depart, the seller suggested that something be put in writing, it appearing that they were agreed as to the amount of the purchase price. The defendant then, in April,

1890, wrote and delivered a contract in writing, which was signed by both, by which the sale was agreed to, but the time of making the cash payment was left to future agreement, and it was provided as to this as follows: " Said sale is made under following conditions, to-wit: Said Chase is to pay unto said Miller, on or before the 1st day of July, 1890, the sum of five hundred dollars, being the first payment of the purchase money for the said tract or farm, and to pay the balance ($14,500), fourteen thousand five hundred dollars, in payments hereinafter to be determined upon by and between said Miller and Chase, provided such payments shall not be less than ($5,000) five thousand dollars per year, with six per cent interest from 1st of January, 1891, and said payments to be paid in not less than —— months from date hereof, and other or residue payments to be paid in full on or before 1st of January, 1893, until the purchase price of $15,000 shall be fully paid as herein mentioned." It was provided also that Chase was not to disturb the tenant then on the farm before the expiration of the crop year, and that Chase was not to have any of the crops of that year unless he paid the $5,000 by the first day of November following, and not to pay the taxes unless he got the crops, and that Miller was to have the use of a spring on the farm for life. Miller hesitated, he says, but signed and delivered the contract. Chase departed in a few minutes on the train, but came back before the 1st of June, and was put in possession of the farm, and paid the $500 in a manner satisfactory to Miller by getting the agent of Miller, in selling the land, his son-in-law and nephew Long, to receipt to Miller for $500, and take him on the claim. He gave Miller a draft for $2,000, which was protested, and, except small sums ($500 in sheep, $150 in a carriage, and $250—this said to be for crops), has paid nothing. Chase not complying with his contract, in April, 1891, Miller repudiated it on his part, and brought an action of unlawful detainer in the county court to recover the possession of the land, when and in which action there was verdict and judg-

ment for Miller, which, on Chase's appeal, was affirmed in the circuit court of Frederick county. From this judgment Chase obtained a writ of error to this court, where that controversy is still pending and undetermined; when, in April, 1892, Miller brought this suit to set aside the contract for fraud, as stated above.

The contract having been mutually agreed to in writing, and the terms of it as to payments of the purchase money having been broken by Chase, who, as we have seen, was to pay $5,000 by the 1st of January, 1891, and Chase having been put in possession by Miller, and part of the purchase money having been paid, and a large part due and unpaid, we are not informed why Miller did not seek to have the contract enforced, and the land sold to satisfy the purchase money due and unpaid. It must be borne in mind that Miller is the vendor, and the fraud alleged is as to false representations made by Chase as to his means of making payment; and there is no allegation of insolvency on the part of Chase at the time of making the contract, but present insolvency is charged in the bill, and may be said to be proved, outside of the land, of which, in equity, Chase is regarded as the owner, and Miller as owner of the purchase money. The contract not having been complied with by Chase, Miller has the right to go into equity, and have it enforced against Chase, and the land subjected to the satisfaction of his debt, for which it stands as security. There is a failure to pay on the part of Chase, and he is, under his contract, liable to pay the debt. But the evidence shows that at the time of entering into the contract Chase had an expectation in South Carolina of an interest in a vineyard, as he says; and, as Miller alleges, the ownership of the vineyard was asserted to him. But the evidence shows that before he was put in possession of the tract of land Chase informed Miller that he had been disappointed as to this vineyard, and could not get any money from that source. It seems that Chase had information of a sale of stock, for which he

was to get $3,666 66, and on which he drafted in Miller's favor for $2,000 towards the cash payment. But here the sale failed, and Chase failed to realize according to his expectations. What Chase's other expectations were we do not know. He now appears to be insolvent. But the evidence does not sustain the allegations of fraud or of false representations made in the bill. Chase informed Miller before the contract was written of his inability at that time to make any considerable cash payment, and the parties had left Miller's house, where the negotiations were going on; and Chase started on his way homeward, when Miller asked for and obtained a written contract with Chase for the sale, time of payments to be thereafter agreed on, and Chase was subsequently put in possession by Miller, after Miller had been informed that the vineyard sale had been a failure. Miller held on to the contract, and sought to obtain a compliance from Chase after he knew all. This suit, therefore, appears to be an effort to claim against a contract, under which, with full knowledge, he asserted his rights. His remedy is for specific enforcement of the contract between himself and his vendee and his debtor. Upon the allegations of the bill there was no insolvency of the purchaser, and subsequent insolvency does not constitute a ground for a rescission of the contract. The action of the circuit court in rescinding the contract and decreeing an account of the partial payments—of the profits of the land—to be offset against them is erroneous, and must be reversed and annulled, and the cause remanded to the circuit court, where the plaintiff may amend his bill as he may be advised.

FAUNTLEROY, J., and HINTON, J., dissented.

DECREE REVERSED.